UNITED STATES of America, Plaintiff,

v.

Anton BAUMANN, Defendant.

No. 89-C-362.

United States District Court,
E.D. Wisconsin.

May 17, 1991.

Betty Ellen Shave, Susan Masling, Susan Siegal, Dept. of Justice, Washington, D.C., for plaintiff.

David J. Cannon, Michael, Best & Friedrich, Milwaukee, Wis., for defendant.

## OPINION AND ORDER

CURRAN, District Judge.

The government commenced this action pursuant to section 340(a) of the Immigration and Nationality Act of 1952, as amended, 8 U.S.C. § 1451(a), seeking an order revoking and setting aside the May 14, 1957, Order of the United States District Court for the Eastern District of Wisconsin admitting the defendant to United States citizenship and canceling his Certification of Naturalization No. 7676233. As grounds for this requested relief, the government maintains that Anton Baumann, as a member of the *Waffen-SS*, served as an armed guard at the Stutthof Concentration Camp and that, as such, he was ineligible to be granted a visa to enter the United States and to receive his subsequent naturalization.

Jurisdiction is premised on 28 U.S.C. § 1345 and 8 U.S.C. §§ 1421(a) and 1451(a). A trial to the court was followed by a period of extensive briefing, and the following constitutes the court's findings of fact and conclusions of law.

## FACTUAL BACKGROUND

Anton Baumann was born on May 17, 1911 in Such Borova, Virovitica District, Yugoslavia of German parentage. He was a carpenter by trade and in February 1936, he married Agnesa Schauer. He served in the Yugoslavian Army from November 1938 through May 1940.

In 1942, defendant began service with the *Waffen*-SS and, as a member of the *SS Totenkopf-Sturmbann*, served as an armed guard at the Stutthof Concentration Camp near Danzig, Germany. Members of the *SS Totenkopf-Sturmbann* or Death's Head Battalion wore grey/green uniforms with the Death's Head insignia on their collars. SS guards were responsible for preventing escape and were under orders to shoot prisoners attempting escape. Some guards were also charged with prisoners' work details which often resulted in the inhuman and brutish treatment of prisoners. The SS guards were paid and were allowed leaves. In September 1943, the

defendant was transferred to SS guard duty at the Buchenwald Concentration Camp.

The parties have stipulated that the operation of Stutthof Concentration Camp constituted activity encompassed by the regulations, that is, conduct contrary to civilization and human decency.

In June of 1950, Baumann applied for admission to the United States at the U.S. Consulate in Salzburg, Austria. In his sworn application for Immigration Visa and Alien Registration, Baumann provided that from 1925 until 1944, he resided in Such Borova, Yugoslavia. Baumann also orally swore to the truth of the information contained on the application.

In 1957, Baumann applied for naturalization. Question 9 of the application inquired as to the applicant's membership in any organizations, clubs or societies in the United States or in any other country before the last ten years. Baumann responded "none." This also was a sworn document. Provision 19 of the application provided that "no person shall be regarded as a person of good moral character who ... has given false testimony for the purpose of obtaining any benefits under the Immigration & Naturalization laws." It then inquired whether the applicant had "at any time, either within or outside the United States, ever ... committed [this] act [ ]?" to which Baumann answered "no." Anton Baumann became a citizen on May 14, 1957.

## DISCUSSION

The government has asserted two independent bases for denaturalization: (1) that Baumann was not lawfully admitted to the United States as required by section 316(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1427(a)(1) because of his *Waffen*-SS service as a Nazi concentration camp guard and (2) that the false testimony he gave in obtaining his visa resulted in a lack of moral character required for naturalization by section 316(a)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1427(a)(3). If the government proves either of these contentions by proof that is clear, unequivocal and convincing, then Baumann's citizenship must be revoked. *Schneiderman v. United States*, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796 (1943); *Fedorenko v. United States*, 449 U.S. 490, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981); *United States v. Kairys*, 782 F.2d 1374, 1378 (7th Cir.), *cert. denied*, 476 U.S. 1153, 106 S.Ct. 2258, 90 L.Ed.2d 703 (1986).

Government Exhibit 1.11 is an SS personnel card made out to Anton Baumann born on May 17, 1911 in Such Borova, Virovitica District, which the defendant has stipulated is his date and place of birth. It identifies Baumann as a "joiner" whose wife has the maiden name "Agnesa Schauer." The defendant has stipulated that his pre-war occupation was that of a carpenter and that his wife's maiden name was Agnesa Schauer. It identifies Baumann as having served in the Yugoslavian army from November 12, 1938 to May 12, 1940, to which the defendant has admitted. It indicates that Baumann is an ethnic German. Baumann identified himself as an ethnic German on his Application for Immigration Visa and Alien Registration. Also admitted into evidence is a photograph of the defendant in the *Totenkopf-Sturmbann* uniform. There has been no challenge to the authenticity of these documents.

Frank Walters, a former Vice Council and visa analyst offered uncontroverted testimony that all concentration camp guards were ineligible for United States visas at the time the defendant filed his visa application.

There is no evidence as to what duties the defendant performed while assigned as a guard at the Stutthof Concentration Camp or that he was ever inside the Camp. Likewise, there is no evidence that Baumann personally mistreated or killed any prisoners. The fact that these events occurred approximately a half century ago makes such proof difficult if not impossible. By the same token, some might question the wisdom of committing substantial resources, both financial and human, to revoke the citizenship of a young man who lied forty-one years ago in order to start a new life in a new land. As former Chief

Justice Burger stated, "the way a society treats those who have transgressed against it is evidence of the essential character of that society," *Hudson v. Palmer*, 468 U.S. 517, 523–24, 104 S.Ct. 3194, 3199, 82 L.Ed.2d 393 (1984). In arriving at its decision, this court is mindful of the fact that Baumann has lived in the United States for over forty years, has raised a family, and been a productive member of society. At the same time, the court is mindful of the fact that Baumann entered the United States on an invalid visa and acquired that coveted citizenship unlawfully.

The Seventh Circuit recently recognized that even if a concentration camp guard did not personally participate in brutal acts, "the fact of his armed, uniformed service is sufficient to establish that he assisted in persecution." *United States v. Schmidt*, 923 F.2d 1253 (7th Cir.1991). The court must accordingly find that the government has established by clear and convincing evidence that, as an armed guard at the Stutthof Concentration Camp, Anton Baumann was ineligible for a visa as having acquiesced in the Nazi persecutions. The court must further find that the government has established by clear and convincing evidence that by giving false testimony for the purpose of obtaining immigration benefits, pursuant to the Immigration Act of 1924, Anton Baumann lacked the statutorily required good moral character prerequisite to becoming a United States citizen.

It is accordingly ORDERED that the United States citizenship of Anton Baumann IS REVOKED and the Naturalization Order of May 14, 1957, is SET ASIDE.

IT IS FURTHER ORDERED that Certificate of Naturalization No. 7676233 IS CANCELLED.

IT IS FURTHER ORDERED that the defendant shall, within 60 days from date hereof, surrender and deliver his Certificate of Naturalization to the Attorney General.

Done and Ordered.